Our first case this afternoon is the state of Illinois versus Ryan shoots case number 4140956 for the appellant we have Mr. Williams and for the affilee we have Mr. McNeil, you may proceed counsel. May it please the court counsel. My name is James Ryan Williams on behalf of the office in the state appellate defender. It's my privilege to represent. Before this honorable court. In this case, Mr. Shoes was represented by three different attorneys. Mr. But despite being represented by three different attorneys. Ryan never received the undivided loyalty of counsel. Rather, his attorneys undisclosed prior and contemporaneous representation of state witness Christopher Johnson gave rise to conflicts of interest. Each of which individually more remand. Starting first with Miss Foster. Miss Foster was originally retained by Ryan in July of 2013. And she continuously represented him until December of 2013. When he terminated her representation on the eve of trial. During this time, Miss Foster represented Ryan on numerous substantial matters, including the waiver of his right to a jury trial. And numerous state motions on motions to compel and motions to allow evidence under 115, 7.2, and 7.3. Also during this time, July to December 2013, Miss Foster began representing a man who would later become a state witness against Ryan. And that was Mr. Christopher Johnson. Now she didn't start representing him until November of 2013, right? Correct. It wasn't July, but it was November. Oh, right. I was actually just about to clarify that. I apologize. But yeah, so Miss Foster, again just to clarify. So Miss Foster was representing Mr. Schutz from July to December 2013. And then she began representing Mr. Johnson in November of 2013. And she was representing him on three separate felony drug distribution offenses. Now, according to Christopher Johnson, at some point between November 2013 and January 2014, he allegedly had a conversation with Ryan in the jailhouse where Ryan allegedly confessed guilt and described these offenses in detail. Now, when Miss Foster learns that one of her clients has allegedly confessed guilt against another one of her clients, who's now attempting to essentially use that as leverage for a favorable plea agreement, she makes no attempt to seek a waiver. And in fact, she does not even attempt to bring this to the trial court's attention. Instead, what she does is she proceeds to negotiate on Christopher's behalf a plea agreement that secures his testimony against her other client, Ryan, in this very same case. So we don't definitively know that those negotiations took place while she was representing both your client and Mr. Johnson. Isn't that a fair statement? Absolutely, Your Honor. And so, was it February of 2014 when they appeared in court regarding that plea agreement where Mr. Johnson agreed to testify against Mr. Schutz? It was. I believe it was February whenever the plea agreement was ultimately executed. And at that time, she had not been representing your client since December of 2013, right? That is correct, Your Honor. Okay. I guess this is the crux of it for me. You try to shape this as a per se conflict in your brief, and I know that's not the only argument you make, but you make that we should. If we find this to be a per se conflict, will we be adding another category? To be perfectly honest with you, Your Honor, I have grappled with this concept myself. In some sense, I would say perhaps, because, you know, this particular factual situation does not squarely fall within the existing – I do say my briefing three, but I believe there are four existing per se conflicts. What's the fourth one? The guardian ad litem. Oh, yes, that one case that's out there, but it's kind of – Yeah, I put that – No, that's fine. No problem. But at the same time, I mean, it was all the way back in 1914 when our Illinois Supreme Court explained that the rule had been – excuse me – that the rule had then been established that an attorney cannot do what Ms. Foster did here. And in essence, that's just simply representing one client against another, and worse here, she does it in the very same case. And so perhaps in some sense, this is a new per se conflict, but at the same time, I mean, this is really the quintessential conflict of interest, what has occurred here in this case. I mean, this basic rule that you can't represent one client against another, it is – you know, it's a basic rule of our legal procedure. It is the foundation of our conflict of interest jurisprudence. It's memorialized in Illinois Rule of Professional Conduct 1.9a. And it's principally intended to – it's principally intended to maintain the integrity of our judicial system and to protect against even the appearance of impropriety or even the appearance of a conflict. And, you know, to be clear here, we're obviously – we're not accusing Ms. Foster of having actually disclosed any confidential information. But that, of course, can never be known. But that is exactly why application of the per se conflict rule is appropriate under these circumstances. It is not – it is what is not in the record or what is incapable of being reflected by the record that warrants application of the per se conflict rule. But there's no allegation even or inference that she somehow disclosed something. I mean, this is allegedly a statement your client made to another inmate. So there's no suggestion that this information came about as a result of Ms. Foster's relationship with your client. Correct. And, again, we're in no way suggesting that. But, again, it is that very reason why application of the per se conflict rule is appropriate here. Because it's those things that are incapable of being reflected in the record that warrant application of the rule. As this Court has explained, the breadth of the per se conflict rule reflects the fundamental importance of removing all doubt from the mind of the convicted that he or she received the undivided loyalty of unconflicted counsel. Now, the State here insists that all of this is perfectly acceptable, representing one client against another client, because, as you noted, Your Honor, Ms. Foster was no longer representing Ryan at the moment in time when this plea agreement was executed. This, however, ignores the fact that we do have simultaneous representation occurring for, I believe, it's a little over a month's period in the month of November and December 2013, which, of course, is within the timeframe of when this alleged jailhouse conversation occurred. The State's position also ignores the fact that we also have a contemporaneous professional relationship here, in the sense that Ms. Foster is representing Christopher in a matter that is substantially concerning this current case, because it's in the case that is the subject of the plea agreement that secures Christopher's testimony here against Ryan. Is that what we mean by substantially related? Because I'm not so sure that that's accurate. I mean, sure, the agreement involved him testifying against Mr. Schutz in his case, but there's no connection between the cases. I mean, other than the fact that Christopher is attempting to use this alleged conversation as leverage to negotiate a favorable plea agreement, I mean, it sure seems that Christopher's case is, indeed, substantially related to this case, because, again, Well, are the crimes related in any way, the charges? No, Your Honor. Moving on to Mr. Herzog, Mr. Herzog is one of the two attorneys who actually represented Ryan for trial, and he, like Ms. Foster, also represented state witness Christopher Johnson in the case that was the subject of the plea agreement that secured his testimony in this case. Now, admittedly, Mr. Herzog represented Mr. Johnson before he began representing Mr. Schutz, and he also did so at a bond hearing. But, again, in a similar way, he's representing Christopher in the case that is the subject of the plea agreement that secures his testimony in this case. And in that way, again, I believe that it is concerning this case. And that, of course, is a per se conflict of interest. And, in fact, I believe that How is that per se? I mean, he did not represent him at the time of the negotiation, right? He was not representing Mr. Johnson, obviously, since Ms. Foster was. Correct. Right, and so he represented him at a bond hearing prior to these statements allegedly being made to Mr. Johnson, right? Correct, Your Honor. And his representation was terminated, his representation of Mr. Johnson was terminated prior to him representing your client at the bench trial, right? Correct, Your Honor. So how is that per se? I'm sorry. Well, in that way, we do not have a simultaneous representation that is occurring at the same time. But it nonetheless is contemporaneous in the sense that it is in a matter that is concerning this case. And where this is reasonably a legitimate concern is that there's a significant danger here, as what ultimately happened here, with respect to the actual conflict, that Mr. Herzog's prior representation of Christopher would impede his ability to adequately cross-examine Christopher in this case. And, indeed, that's exactly what happened here. So I'll note the state pretrial disclosed a number of most of Christopher's prior convictions that were relevant to impeachment. And yet, at trial, Mr. Herzog made absolutely no attempt to impeach Christopher with any of these. Now, according to the state, this is because Christopher's lengthy criminal history had already been elicited on direct exam. Was their prior history elicited on direct exam?  However, importantly, the state did not elicit the fact that Christopher had previously served time in prison for aggravated battery. The state did not clarify that the plea agreement that Christopher had executed involved not one, but three separate felony drug distribution offenses. And, most importantly, the state did not elicit testimony from Christopher regarding a 2012, which was one year prior, roughly, a 2012 felony theft conviction. Now, I see that this is important, not just because it's a crime of dishonesty or because it's a recent felony, both of which would allow it to be an impeachable offense, but this was actually the case where Ryan's other attorney, Mr. Rumley, represented Christopher from arraignment through sentencing. And so, Mr. Rumley, like Mr. Herzog, made absolutely no attempt to impeach Christopher with any of his priors, again, including the specific one wherein he had previously represented Christopher. Let me back up a little bit with respect to Mr. Herzog. So, is it your position that unless an attorney elicits every allowable impeachable offense, then they're ineffective or not effectively cross-examining a witness? I think it's fair to say that in that way, when an attorney fails to do so, that the attorney's trial strategy and tactics have been affected. But do you agree that the state was pretty explicit about his prior record? I mean, they went into it in a pretty detailed fashion, although I agree you're correct. They didn't necessarily mention the one that Mr. Herzog was involved in, and I think a couple of others, but he had an extensive prior history, right? That is accurate, Your Honor. And they went into quite a bit of it? That is accurate, Your Honor. Finally, I think it's important to note that none of the attorneys that were involved in this case made any attempt to simply seek a waiver of any of these various conflicts, nor did they make any attempt to bring these matters to the trial court's attention. So, just to briefly recap, we have Ms. Foster, who's representing Ryan and Mr. Johnson, essentially both in this case. We have Mr. Herzog, who's representing, of course, Ryan in this case, and Mr. Johnson in the case that's the subject of the plea agreement that secures his testimony in this case. We have Mr. Rumley, who is representing Ryan in this case, and who previously represented Christopher in the 2012 felony theft case that he was not impeached with. And I should also note that the State's attorney here, Mr. Grist, he's the individual who's prosecuting this case against Ryan. He's also the individual who has negotiated with Ms. Foster this plea agreement that secures Christopher's testimony against Ryan in this case. So, we essentially have four attorneys here who either were or were not. Did you touch that in your brief regarding the State's attorney? I'm not sure if that was specifically addressed or not. I'm sorry, Your Honor. But what we have here is we have a situation where we have four attorneys who either were aware or certainly should have been aware of these various conflicts of interest, and yet none of them simply sought a waiver, nor did any of them even try to bring these matters to the trial court's attention. And to that end, I'll note, it appears, based on this record, that the court itself would have had no way of being aware of any of these conflicts that are going on. So, unless this Court has any further questions? Well, Counsel, I'm not exactly sure. Could you state for me, I mean, with the existing law, the first aid, there are three categories other than that kind of aside with the guardianship case. So tell me what category each attorney falls under. I know that with Foster, I think you're pretty much agreeing that it would be some type of new category. But Herzog and Romley, are you saying that they represented a witness for the State? Or exactly what role are you pegging them in? I think that would be accurate. But I do want to clarify that with respect to Ms. Foster, although perhaps in some sense this is some sort of new category in a general sense, at the same time it nonetheless, I believe, falls squarely within this Court and the Supreme Court's existing first aid conflict jurisprudence. Okay, so with first aid, one we have where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution. Are you alleging that any of them fall under that category? I don't believe so, Your Honor. Okay, so the second category is where defense counsel contemporaneously represents a prosecution witness. Are you saying that any of them fall under that category? Yes, that's the one, Your Honor. I'm sorry, I wasn't sure of the order of them. But I do believe that Ms. Foster and Mr. Herzog both would fall into that category. And to be clear, with respect to Mr. Romley, we are not alleging a per se conflict of interest, but rather an actual conflict of interest. Okay, so let's stick with Foster and Herzog. You said they represented a prosecution witness? Yes.  So the Morales case talks about this issue of a person being a witness and indicates that a person is not a witness until they testify. And so by the time Mr. Johnson testified, he was not a client of Ms. Foster or Mr. Herzog, correct? That is correct. But both of those attorneys, nevertheless, owed a continuing duty to their client, having previously represented them, having previously gained their confidences. I'm wondering, is there a difference between an ethical violation and a per se conflict? I mean, just because it's an ethical violation, does it fit within the statutory, I'm sorry, the case law related to per se conflict? Do you see what I mean? I'm following you, Your Honor. So is it automatic if it's an ethical violation that it's a per se conflict? Well, an ethical violation certainly would not be an automatic reversal, but again, I do nonetheless believe that we do have impermissible, contemporaneous, professional relationships which do fall squarely within this Court and the Supreme Court's existing per se conflict jurisprudence. Unless there are any further questions? I don't see any. Thank you, Counsel. Thank you. Mr. McNeil? May it please the Court? Counsel? Yeah, as for Ms. Foster, she represented the defendant until December 2013. She represented State's witness, Johnson, starting in November 2013. There's absolutely nothing in the record that indicates that Ms. Johnson was any sort of prosecution witness until February of 2014. But doesn't this look bad? Doesn't it raise the appearance of impropriety? Well, I don't think, I think she was fired by defendant. Okay. And then takes on another client who happens to... Well, she represented him since November. Right, you're right, you're right. And so she has this other client who all of a sudden now has a jailhouse confession regarding the client that fired her and gets a deal to testify against the former client. I mean, if you're suggesting some sort of feeding of information from counsel to State's witness... Well, my question is, does it look bad? The optics aren't the best. However, there's nothing to suggest any foul play or anything like that. And of course, the witness didn't agree to plea into an open agreement in exchange for his honest testimony in this case until February of 2014. Hernandez lays out the three per se conflict principles. As you mentioned, the only one this could possibly fall under is the contemporaneous representation of a prosecution witness. I would submit that this wasn't contemporaneous, first of all. Ms. Foster didn't represent the defendant at trial. She had nothing to do with the defendant's trial. She wasn't present. Although the defendant argues multiple times in his brief that Mr. Johnson was quote, represented by Ms. Foster at this trial. I mean, Mr. Johnson was a witness. He wasn't represented by anybody. She wasn't at the prosecution table cheering him on or anything. So, there was no contemporaneous representation. And he was not a prosecution witness until February of 2014. These are two completely separate acts. People versus Daly, which is what the defendant primarily relies upon. The main distinction, which might have been, I was looking at the forest instead of, looking at the trees instead of the forest. The main distinction is that the subject attorney in Daly was defendant's trial counsel. Ms. Foster was not defendant's trial counsel in this case. And in fact, Hernandez applies to any application of Hernandez as far as contemporaneous representation. Besides Daly, any application of that concerns defendant's trial counsel. It doesn't concern defendant's prior counsel. It would be hard to even think about how Ms. Foster's prior representation of defendant would be relevant whatsoever to anything in this trial, let alone Mr. Johnson's testimony. And it's hard to imagine how whoever Mr. Johnson's counsel was, how that would be relevant at all in cross-examination or anything like that. I mean, who cares who his counsel is? He's testifying to what he heard in the county jail. This has nothing, these two issues have nothing to do with each other. The optics, the timing, like you said, it's coincidental. And, I mean, that would be a serious allegation to come up with. However, nothing in the record suggests any kind of foul play. And if we're going to assume that this is a per se conflict, that opens the floodgates to public defender's office in this state having to do a ton more work, checking, rechecking, cross-checking, not only defendants' prior representations, but every single state witness's prior representation. That's a pretty hefty burden to hoist upon every public defender's office in this state. That's just from a policy perspective. People versus probes, which I cited, distinguished daily. It's another opinion in this court. Justice McCullough wrote in 2003. It distinguished daily in multiple applicable ways as far as per se conflicts go. One was the prior representation of defendant wasn't relevant to defendant's trial. That can be said here. Of course, Ms. Foster's representation of defendant during pretrial matters had nothing to do with defendant's trial here. Also, the witness's interests were not furthered by an unfavorable outcome to defendant. First of all, no promises were made. Of course, I'm sure he was hoping to get good faith from the court that he entered into this open plea to testify in this case. However, no promises as to sentences or dismissal charges or anything were made to Johnson in this case. Two, maybe more importantly, defendant's guilt, whether he's found guilty or innocent, didn't matter as far as Johnson's testimony. An unfavorable outcome would not have benefited Johnson in any way in this case. That also plays into Mr. Rumley and Mr. Herzog, defendant's actual trial counsel. Mr. Herzog represented Mr. Johnson in June of 2013 at a single bond hearing. That's the only time he represented this guy. And this was before defendant was even charged with this crime. So, of course, it was before defendant was in jail for this crime. Any conversation? Oh, I would also mention the timeline as for when Johnson supposedly heard this from defendant in the jail. He testified that it was approximately three months after defendant got into the county jail, which would have been sometime in September, which would have mean this persists sometime in December at the earliest. At that point, he's no longer represented by Ms. Foster as far as the timeline concerns. I mean, if we're going to hypothesize that somehow Ms. Foster made all of this happen, the timeline just doesn't add up anyway if we're even going to go down that path. Well, Mr. Johnson wasn't real clear on exactly when. He said, yeah, I mean, he wasn't. Again, it would have been easier for the state if this guy had never testified. I mean, the trial court had no, they placed no credibility on this guy. They even said so in their specific findings. Presumably the witness, the victim's testimony was what convicted defendant here, not this jailhouse snitch, which is exactly what they called him. I don't see how defendants going to argue now that defense counsel pulled their punches on him when they attacked him pretty hard in their closing arguments and pointed out the major inconsistency in his testimony, which was that he testified defendant went upstairs even though it was a one-story apartment. Not only was defense counsel's cross-examination trial strategy, it was effective trial strategy. I mean, the court disregarded this guy's testimony and didn't put much faith in it at all. Well, what about this allegation that they didn't cross-examine Mr. Johnson on every prior that he had and specifically priors that they had been involved in? The state spent some time going through his criminal record. Not only that, they spent some time, the trial court was well aware that he negotiated an open plea to testify in exchange for his testimony in this case. The trial court was well aware he had a lengthy criminal record. This wasn't a jury trial. It didn't need to really be crammed down the judge's throat that this guy was a career criminal. I think it was pretty, pretty, everyone in the courtroom was pretty aware of that fact. Presumably that's why the trial court didn't place any emphasis or credibility on his testimony. Never mind that. The fact that they didn't talk about his specific, I mean, presumably they didn't, I mean, nobody ever mentioned these. I mean, this guy might not even remember that he represented him at a single bond hearing in 2013. It was almost a year before that. And this other guy represented him. I mean, the other guy did the whole trial, but this was in 2012. In fact, I think only one of the two cross-examined Johnson. I think it was Herzog. I don't think Mr. Rumley cross-examined. I could be wrong. So it would be hard to talk about. The one that didn't impeach him, it would be hard for him to impeach him at all if he didn't have the opportunity to cross-examine him anyway. At any rate, in closing argument, they call him a jailhouse snitch. They say his testimony is laughable. It was clear to the trial court that this guy was a career criminal. And they made an effective argument that this guy was just testifying, saying whatever he could to benefit himself in the situation. And it was effective. The trial court believed them. So, again, since there were no per se, there's clearly no contemporaneous representation here. The defendant needs to show actual prejudice. And in this case, there clearly was no actual prejudice as far as any of the three counsels and their minimal involvement with this defense witness years ago, as far as Ms. Foster, her minimal involvement prior to the defendant's case. So I would say that pursuant to Hernandez, this clearly does not fall under any per se conflict, exception, or rule. And pursuant to this court's people versus probes opinion, there's clearly no prejudice or actual conflict as far as Ms. Foster. How would you go about proving an actual conflict with respect to Ms. Foster if there was an allegation that somehow information that was communicated to her confidentially actually was communicated to her other client? How would you prove that? Affidavit, post-conviction? Affidavit from whom? I guess it would be hard. Unless the attorney wants to come in and say, yes, I did tell this client to do this to this client. I mean, it's virtually impossible. But, again, that could be then claimed in any case with any kind of connection as far as witnesses and defendants' representation down the line. It would be a very difficult burden. I think the burden should be at least to have some suggestion in the record that this occurred for there to be a conflict. Especially, again, we can't create out of thin air that this conflict started when she was simultaneously representing both of these clients. This guy was not a witness until February of 2014. She hadn't been dependent of counsel in months. And unless there's something in the record or any scintilla in the record that suggests some kind of conflict during that month, this guy had nothing to do with this case during that month. If there are no more questions, I thank the Court. I don't see any, thank you. Any rebuttal, Mr. Williams? Yes, thank you, Your Honor. As Your Honor just noted, it would be impossible for Ryan to prove that Ms. Foster disclosed any confidential information. But this is precisely why the per se conflict rule is appropriate here. This is a situation that is ripe for conflict. We do not, we cannot know how Ms. Foster's dual representation of these individuals may have affected her pre-trial representation of Ryan. And we do not and cannot know if Ms. Foster disclosed any confidential information. And the fact that it is impossible to prove such a thing is exactly why application of the per se conflict rule is appropriate here. Now, the State notes that this conversation may have occurred in December 2013 based on Mr. Johnson's subsequent statement that it occurred three months after his incarceration. However, I should note that he also previously testified, he originally testified, that is, that it occurred two months after his incarceration, which according to the State's calculation would have placed it in November. And again, this is when Ms. Foster is representing both Mr. Johnson and Mr. Shutes. The State points out here that this is going to open up the floodgates. I would respectfully disagree with that. I mean, really, all they have to do is seek a waiver of these conflicts. It really is not that difficult. And the State also submits that, you know, I believe Mr. McNeil stated that, you know, who cares who the State's witness attorney is. Well, Mr. Shutes cares, and I would respectfully submit the society at large cares. Respectfully, this is an unthinkable situation. You have an attorney who is representing an individual. The State says that she had minimal involvement. She represented him for nearly six months up to the eve of trial. She was entrusted with his confidences. For her to go on and represent another individual against him, potentially disclosing confidences or potentially being influenced by her confidential information, it's just not something that our law can permit. As our Supreme Court explained over 100 years ago, the rule has long been established. You cannot do this. And as Your Honor said, this is just a situation that looks bad. As this Court has explained, the breadth of the per se conflict rule represents the fundamental importance of removing all doubt from the convicted mind that he received unconflicted, completely loyal counsel. And unless this Court has any further questions, I would respectfully ask that this Court remain in this matter for a new trial with conflict-free counsel. Thank you, Your Honor. Thank you, counsel. We'll take the matter under advisement and be in recess.